IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CONNIE M. WILDE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 13-CV-486-GKF-PJC |
| CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

## **OPINION AND ORDER**

Before the court is the Report and Recommendation of United States Magistrate Judge Paul J. Cleary on the judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits [Dkt. #22] and the Objections thereto filed by plaintiff, Connie M. Wilde ("Wilde"). [Dkt. #27]. The Magistrate Judge recommends the Commissioner's decision be affirmed. Wilde objects to the Magistrate Judge's Report and Recommendation, arguing: (1) the ALJ did not conduct a proper inquiry into whether Wilde can perform past relevant work and by made several errors while considering whether Wilde can do other work; (2) the ALJ made a faulty consideration of the medical and nonmedical source evidence by giving inadequate weight to the opinion of Wilde's treating physician; and (3) the ALJ did not apply the Kepler factors properly when assessing Wilde's credibility. For the reasons below, the court adopts the Magistrate Judge's recommendation and affirms the ALJ's denial of benefits.

## I. Procedural History

Wilde filed her applications for disability benefits on April 6, 2010. [Dkt #14-5, pp. 2-5]. The Social Security Administration denied the applications initially and on reconsideration. [Dkt. #14-4, pp. 4-6, 12-15]. ALJ Gene M. Kelly held an administrative hearing on January 12, 2012. [Dkt. #14-2, pp. 42-84]. By decision dated February 27, 2012, the ALJ found that Wilde was not disabled. [*Id.*, pp. 19-31]. On June 4, 2013, the Appeals Council denied review. [*Id.*, pp. 2-6]. Consequently, the decision of the ALJ represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

## II. Standard of Review

Pursuant to Fed. R. Civ. P. 72(b)(3), "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." However, even under a *de novo* review of such portions of the Report and Recommendation, this court's review of the Commissioner's decision is limited to a determination of "whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is more than a scintilla, but less than a preponderance. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)). Even if the court would have reached a

different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1500 (10th Cir. 1992).

## III. Consideration of the Consultative Examination

In several of Wilde's objections, Wilde argues the Magistrate Judge did not give adequate weight to Dr. Hastings's report. [Dkt. #27, pp. 7-8]. Wilde obtained this report after the ALJ's unfavorable decision, but before the Appeals Council denied review. [Dkt. #14-2, pp. 2-6]. The Appeals Council incorporated the report into the record when considering whether to review the ALJ's decision. [*Id.*].

The Tenth Circuit has held that a court must "consider the entire record, including [the newly submitted] treatment records, in conducting our review for substantial evidence on the issues presented." *Martinez v. Barnhart*, 444 F.3d 1201, 1208 (10th Cir. 2006). At the same time, the Magistrate Judge need only consider issues that have been fully developed by the parties. Indeed, a claimant who makes a "perfunctory presentation" of an argument "deprive[s] [the district] court of the opportunity to analyze and rule on [the] issue . . . ." *Wall v. Astrue*, 561 F.3d 1048, 1066 (10th Cir. 2009). The Magistrate Judge expressed concern over the perfunctory presentation of arguments in this case, as well as concern for the agency process when a claimant waits until after an unfavorable decision by the ALJ to seek a consultative examination. [Dkt. #22, pp. 14-15]. Despite his concern, the Magistrate Judge considered Dr. Hastings's report although he limited his review of the report to "those issues sufficiently developed by Wilde," and noted "[a]ll issues not raised by Wilde or not sufficiently developed for meaningful review are waived." [*Id.*, p. 14].

## IV. Step Four and Five Determinations

Wilde objects that the Magistrate Judge did not give more weight to Dr. Hastings's report at step four and five. [Dkt. #27, pp. 7-8]. Specifically, Wilde claims the ALJ improperly found she could perform past relevant work at step four and could perform other work at step five. [Dkt. #27, p. 7]. The Magistrate Judge agreed with Wilde that the ALJ failed to make the three-phase inquiry as to whether Wilde can do her past relevant work. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996); [Dkt. #22, pp. 15-16]. However, if the ALJ properly makes alternative findings at step five, any error at step four is rendered harmless. *Murrell v. Shalala*, 43 F.3d 1388, 1389 (10th Cir. 1994). The ALJ made alternative findings at step five. Therefore, the court looks at the ALJ's analysis at step five to determine if his failure at step four was harmless.

At step five, the ALJ determined Wilde had the RFC to perform less than the full range of light work as defined in 20 CFR § 404.1567(b) with additional limitations. [Dkt. #14-2, p. 23]. Wilde objects to two of the specific limitations and makes two additional general objections to the ALJ's step-five analysis.

### A. Lifting Strength

The ALJ found Wilde could lift up to twenty pounds occasionally and ten pounds frequently. [*Id.*]. Wilde objects, arguing Dr. Hastings's limitation of eight pounds and Dr. Al-Shathir's observation that she could lift twelve and a half pounds deprives the ALJ of substantial support for his finding. [Dkt. #27, pp. 8-9].

Dr. Hastings's eight pound limitation, which was not before the ALJ, is contrary to all other evidence, including Wilde's testimony that she could lift ten and twenty pound bags of potatoes and Dr. Al-Shathir's report. [Dkt. #14-2, pp. 64-65]; [Dkt. #14-7, p. 72]. Dr. Al-

Shathir's report stated "[Wilde] was able to bend and lift 12 – 1/2 pounds from the floor. [Dkt. #14-7, p. 72]. This was merely an observation, not a limitation. In fact, Dr. Al-Shathir's observation supports the ALJ's finding that Wilde could frequently lift ten pounds and occasionally lift twenty pounds. The ALJ's limitation is supported by substantial evidence in the record even in light of Dr. Hastings's report.

As for Wilde's testimony that she could lift twenty pounds, Wilde's counsel claims the ALJ "badgered" Claimant into saying that she could lift 20 pounds. [Dkt. #27, pp. 8-9]. After reviewing the transcript, the court finds this characterization to be without merit:

> Question: . . . could you pick up a fifty-pound bag of dog food and carry it to your basket?
> Answer: No, Sir.
> Question: How about twenty pounds of potatoes?
> Answer: I would probably just buy two tens.
> Question: That's not my question ma'am.
> Answer: I'm sorry then, I didn't quite understand it.
> Question: I asked if you could pick up a twenty-pound bag of potatoes?
> Answer: Maybe.
> Question: What does maybe mean?
> Answer: If it was clear down on the floor or if it was up higher on a shelf might make a difference.
> Question: So if you had to lift it from the floor you'd have more difficulty than if it was like, on a shelf?
> Answer: Yes.

[Dkt. #14-2, pp. 64-65]. Wilde's testimony further supports the ALJ's finding that Wilde could frequently lift ten pounds and occasionally twenty pounds.

**B. Object Manipulation**

The ALJ found Wilde had a slight limitation in fingering. [Dkt. #14-2, p. 23]. Wilde objects, arguing Dr. Hastings determined Wilde had reduced range of motion of the fingers and hands and a weak grip due to osteoarthritis. [Dkt. #14-7, pp. 190-94]. Accordingly, Dr.

5

Hastings limited her hand function to avoid repetitive activities. [*Id.*, p. 195]. Again, this court will not reweigh the evidence. *White*, 287 F.3d at 905.

Wilde testified that while she had pain in her hands, it was not like her back pain [Dkt. #14-2, p. 56], that the problems with her hands were "probably just part of getting old" [*Id.*, p. 60], and that she could pick up poker chips [*Id.*]. Wilde did not mention problems with her hands to Dr. Al-Shathir. His report does not contain a fingering limitation and notes Wilde could "manipulate objects in her hands." [Dkt. #14-7, p. 72]. The ALJ's finding that Wilde had only a slight limitation in fingering is supported by substantial evidence in the record even in light of Dr. Hastings's report.

### C. Medical Vocational Guidelines

The ALJ found Wilde was not disabled under the Medical Vocational Guidelines ("grids"). [Dkt. #14-2, pp. 29-30]. The grids provide tables that take into account the work ability, age, education, and previous work experience of a claimant and then identify a corresponding result of either disabled or not disabled. 20 C.F.R. Part 404, Subpart P. Appendix 2 §§ 201.01-203.31. Wilde cites the grids in support of her argument that she is unable to do new work: "Individuals approaching advanced age (age 50–54) may be significantly limited in vocational adaptability if they are restricted to sedentary work." *Id.* at § 201.00(g). When such individuals have no past work experience or can no longer perform vocationally relevant past work and have no transferable skills, a finding of disabled ordinarily obtains."

The ALJ found Wilde to be approaching advanced age, to have at least a high school education, and to be able to communicate in English. [Dkt. #14-2, p. 29]. The ALJ also determined that the transferability of job skills was not material to the determination of disability because application of the Grids supported a finding of "not disabled." [*Id.* pp. 29-30]. The ALJ

6

found Wilde capable of both sedentary and some light work [*Id.* p. 23] and the vocational expert identified unskilled sedentary and light work jobs that existed in substantial numbers in the regional and national economy. [*Id.* p. 30]. Because the ALJ found Wilde to be capable of both sedentary and some light work, the sedentary and light work tables apply to this case. Under each table, the ALJ's findings are consistent with a conclusion of "not disabled." 20 C.F.R. Part 404, Subpart P. Appendix 2, §§ 201.12, 201.14-201.15, 202.13-202.15.

### D. Mental Limitations

Wilde contends the ALJ's RFC and hypothetical to the vocational expert failed to include findings of moderate difficulties in concentration, persistence, or pace found in the paragraph B criteria findings [Dkt. #27, p. 10]. The Tenth Circuit has rejected this argument. *See Lull v. Colvin*, 535 F.App'x 683, 685-86 (10th Cir. 2013) (unpublished). The RFC analysis at steps four and five should reflect the impact of the impairments found in the paragraph B and C criteria at steps two and three, but these are separate inquiries with different purposes. *Id.* The RFC analysis at steps four and five need not include the Psychiatric Review Technique ratings used at steps two and three, including difficulties in concentration, persistence, or pace. *Id.*

Furthermore, the ALJ in fact included all mental limitations in the two hypotheticals he presented to the vocational expert. At the hearing the ALJ presented three hypotheticals. [Dkt. #14-2, pp. 76-80]. In the first hypothetical he noted "depression and anxiety" but included no specific functional restrictions. [*Id.*, p. 76]. In the second hypothetical, the ALJ included additional limitations such as the requirement that the work be "simple, repetitive and routine." [*Id.*, p. 79]. In response, the vocational expert testified that some jobs she had offered in response to the first hypothetical would be precluded by the additional limitation to simple, repetitive, and routine work. [*Id.*]. The ALJ referenced this limitation from the second

hypothetical in the RFC section of his decision when he stated "[h]owever, the claimant's ability to perform all or substantially all of the requirements of [the full range of light work] was impeded by *additional limitations*." [*Id.*, p. 30] (emphasis added). The ALJ identified only jobs that the vocational expert testified were consistent with the additional limitations. [*Id.*]. Thus, the hypothetical and the RFC reflect the "additional limitations" described in the ALJ's paragraph B analysis. For the foregoing reasons, the court overrules Wilde's objection.

## V. Consideration of Medical and Nonmedical Source Evidence

Wilde argues the ALJ failed to weigh properly the opinion of her treating physician, Dr. Henry Tiemann. [Dkt. #27, p. 16]. Opinions of a treating source are usually given "controlling weight," but not always. 20 C.F.R. § 404.1527. The ALJ must follow a two-step process when determining whether the opinion of a treating physician is entitled to controlling weight.

> An ALJ must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (internal citations and quotations omitted). If the ALJ does not assign controlling weight to a treating physician's opinion, the opinion is still entitled to deference and must be weighed under the relevant factors. *Mays v. Colvin*, 739 F.3d 569, 574 (10th Cir. 2014). Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

8

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003). The ALJ is not required to discuss each of the six factors in determining how much weight to assign the treating physician opinion. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Still, the ALJ must provide specific, legitimate reasons for the weight he assigns to a treating physician opinion, even when and if he rejects the opinion completely. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). Specifically, Wilde argues the ALJ failed to address whether Dr. Tiemann's opinion was entitled to controlling weight. [Dkt. #27, p. 18]. Additionally, Wilde argues the ALJ failed at step two by not applying the factors in reaching his decision to assign "little weight" to the treating physician opinion. [*Id.*]. In the Tenth Circuit, a court must reverse and remand when the ALJ fails to follow the two-step inquiry in a manner that deprives the reviewing court the ability to meaningfully review the ALJ's determination. *Krauser v. Astrue*, 638 F.3d 1324 (10th Cir. 2011). However, where the court is able "to follow the adjudicator's reasoning . . . and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). Wilde cites to *Krauser* to argue that failure to follow the two-step sequential inquiry is *ipso facto* legal error which requires the court to reverse and remand. [Dkt. #27, pp. 17-18]. Wilde also contends that *Keyes-Zachary* (the proposition that mere technical omissions do not dictate reversal) is inapplicable to the two-step inquiry for evaluating treating physician opinions.

In *Krauser*, the Tenth Circuit did not hold that failure to follow the two-step inquiry perfectly was *ipso facto* reversible. The court noted:

> The decision not to give controlling weight to [the treating physician's] opinion is not our primary concern with the analysis here . . . the ALJ's assessment of [the treating physician's] opinion is patently inadequate for the distinct reason that it ends halfway through the required two-step analysis: the ALJ simply concluded that '[the treating physician's] opinion . . . cannot be given controlling weight' and then *said no more about it*.

9

638 F.3d at 1331 (emphasis in original).  The Tenth Circuit's primary concern was the ALJ's failure to articulate the weight, if any, he gave the treating physician's opinion, and his failure to explain the reasons for assigning that weight or for rejecting the opinion altogether.  The court explained, "[w]e must remand because we cannot meaningfully review the ALJ's determination absent findings explaining the weight assigned to the treating physician's opinion." *Id.* (quoting *Watkins*, 350 F.3d at 1301).

A number of district courts have rejected Wilde's contention that *Krauser* requires reversal and remand for *any* failure within the two-step inquiry.  *See Blagg v. Colvin*, 2014 WL 1414883 at *3 (April 11, 2014 W.D. Okla.) (stating that an ALJ's error is harmless where a court "can follow the adjudicator's reasoning . . . and determine that correct legal standards have been applied." (quoting *Keyes-Zachary*, 695 F.3d at 1166)); *see also Crandell v. Colvin*, 2013 WL 5651445 at **4-5 (Oct. 16, 2013 D. Utah) (finding no reversible error where the ALJ failed to address controlling weight at step one but provided weight and an explanation of his reasoning at step two); *see also Bouwhuis v. Colvin*, 2014 WL 4354422 (Sept. 2, 2014 D. Utah) (same).

In this case, the ALJ did not specifically articulate why he declined to assign controlling weight to the treating physician opinion, but his reasoning is sufficiently clear from his decision, which states:

> The undersigned has carefully considered the medical source statements in the file of treating physician Dr. Henry Tiemann, M.D. . . . the undersigned gives Dr. Tiemann's opinion little weight, because the degree of limitation he assessed is unsupported by the medical evidence of record, including his own treating notes which found no deficit to gait or station or findings of limited ability to walk. Additionally, as discussed above, the claimant was examined by a neurosurgeon, and had a normal examination.

[Dkt. #14-2, p. 27].  Unlike the ALJ in *Krauser*, the ALJ in this case assigned a specific weight to the treating physician's opinion.  Furthermore, the ALJ explicitly addressed both the third and

10

fourth factors by explaining that the opinion was not supported by the medical record and how it was inconsistent with the record. The ALJ further explained that Dr. Tiemann's finding that Wilde is unable to work for the duration of her life unless seen by a neurosurgeon is sufficiently grave that one would expect to find additional evidence of it in the record. [Dkt. #14-2, pp. 27, 29]. Specifically, the ALJ noted there were no treating notes indicating a deficit to gait or a limited ability to walk. [*Id.*]. The ALJ also discussed the neurosurgeon's examination of Wilde which, although prior to the treating physician's opinion, was essentially normal. [*Id.*, pp. 25, 27]. The ALJ also notes the treating physician's documents consisted of merely a one-page medical examination form and a handicapped parking placard application, which is relevant to the second factor in *Watkins*, the kind of examination or testing performed. [Dkt.# 14-2, p. 27]. The ALJ's discussion and analysis of Dr. Tiemann's treating physician opinion was adequate and his findings were supported by substantial evidence.

This court reiterates the Tenth Circuit's view that "[t]he more comprehensive the ALJ's explanation, the easier our task; but we cannot insist on technical perfection." *Keyes-Zachary*, 695 F.3d at 1166. While the ALJ's application of the two-step inquiry could have been more explicit, this court was able to follow the ALJ's reasoning. Accordingly, the court overrules Wilde's objection.

## VI. Credibility Determination

Wilde's subjective complaints included back problems, stomach problems, chronic pain, bilateral hand problems, depression, and hearing impairment. [Dkt. #14-2, p. 24]. The ALJ found the intensity, persistence, and limiting effects of Wilde's subjective complaints were inconsistent with the objective medical evidence. [*Id.*, p. 25]. Wilde argues the ALJ did not

11

discuss these inconsistencies in sufficient detail in his credibility determination. [Dkt. #27, p. 20].

In *Kepler*, the Tenth Circuit identified specific factors the ALJ may consider in making a credibility determination:

> [T]he levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). The ALJ need not consider all of these factors in each case, as long as he "sets forth the specific evidence he relies on in evaluating the claimant's credibility." *Porter v. Colvin*, 525 F.App'x 760, 764 (10th Cir. 2013) (unpublished) (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)). The specific reasons articulated by the ALJ "should be closely and affirmatively linked to substantial evidence," may not simply recite the factors that are described in the regulations, and should be more than a conclusion dressed up "in the guise of findings." *Hardman v. Barnhart*, 362 F.3d 676, 678-79 (10th Cir. 2004) (quoting *Kepler*, 68 F.3d at 391). "[S]ubjective measures of credibility . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence" are "peculiarly within the judgment of the ALJ." *Kepler*, 68 F.3d at 391.

The ALJ determined that Wilde's allegations could not be accepted as fully credible due to the discrepancies between her allegations and "reported symptoms to treating and examining physicians, the objective medical findings, [and] the conservative treatment prescribed for her allegedly disabling impairments . . . ." [Dkt. #14-2, p. 27]. Specifically, the ALJ noted Wilde testified she only drank socially, and yet in 2009 she told a treatment provider she relieved her back pain with alcohol. [*Id.*]. Wilde testified she experienced back pain on and off for twenty

years, but treating notes did not indicate treatment for her back pain prior to December, 2008. [*Id.*, p. 25]. Also, the ALJ noted that in May of 2009 Wilde presented to Community Health Associates complaining of back pain, but the physician could find no explanation for the pain on plain x-rays. [*Id.*].

While Wilde complained of back pain and arthritic pain in her hands and hips to treating physicians, the ALJ noted the neurosurgeon's 2009 evaluation found "she had full lumbar range of motion in all directions," and "her gait was unremarkable." [*Id.*]. Furthermore, the ALJ noted "[n]o range of motion limitations related to her hands were found in the medical evidence of record." [*Id.*, p. 26]. The ALJ considered some objective findings that might be consistent with back pain, including straight leg raising and lumbar tenderness to palpation, but also noted these were found only intermittently. [*Id.*].

The ALJ noted conservative treatment in the neurosurgeon's evaluation. [*Id.*, p. 25]. Other than Wilde's report of pain when her back was fully flexed, the neurosurgeon's examination was unremarkable and reported no need for ongoing treatment. [*Id.*]. Additionally, while Wilde alleged mental limitations, the ALJ noted her treatment consisted solely of Prozac prescribed by her primary care physician. [*Id.*, p. 26].

Although the ALJ noted Wilde's testimony as to memory problems was not entirely supported by the consultative examiner, he nonetheless limited her to "simple, repetitive, routine work." [*Id.*, pp. 26-27].

In some cases Wilde mischaracterizes the ALJ's analysis. For example, Wilde claims the ALJ ignored the fact that "several physicians noted tenderness, positive straight leg raises, decreased or painful range of motion of the low back . . . ." [Dkt. #27, p. 21]. To the contrary, the ALJ explicitly noted "[o]n repeat physical examination . . . [Wilde] intermittently exhibited

13

lumbar tenderness to palpation. She intermittently exhibited positive straight leg raise test . . . ." [Dkt. #14-2, p. 26].

In sum, while the ALJ could have made more explicit connections between the evidence and his specific reasons for finding Wilde less than credible, the court agrees with the Magistrate Judge that the ALJ's discussion was adequate. Ultimately, these discrepancies provide substantial evidence for the ALJ's determination that Wilde's statements were not fully credible. Wilde's objection is overruled.

## VII. Conclusion

For the reasons set forth above, Wilde's Objections to the Magistrate Judge's Report and Recommendation [Dkt. #27] are overruled, the Magistrate Judge's Report and Recommendation [Dkt. #22] is adopted, and the Commissioner's decision is affirmed.

ENTERED this 11th day of March, 2015.

_____
GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT